UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JUN 1 8 2007



2007 JUL 13  P 2: 49

Eric Floyd                          :        Case No: 3:01CV1221(CFD)(WIG)

    V.

Brian Murphy                        :        May 28, 2007


## Motion For Evidentiary Hearing


    The defendant respectfully requests that this court conduct an eviden-
tiary hearing to determine if the State allowed their key witness to commit
perjury when he testified for the State in the defendants murder trial.


## Brief History of Case:


    The defendant, Eric Floyd, was found guilty of the 1994 murder of Jose
Avellant in Bridgeport Superior Court in 1995 and was sentenced to 55 years
in prison.  The defendant appealed his conviction, while the matter was
pending appeal the defendants appeal counsel learned that the States key
witness had received favorable consideration from the State in exchange for
his testimony.  So, the Connecticut Supreme Court ordered a hearing.  On
August 17, and 31, 1998 the trial court conducted a hearing in compliance
with the courts order.  Among the documents produced by the State at the
hearing was the States Attorney part B file of the pending drug charges
against Younger.

    Joseph Marcello, the Supervisory Assistant States Attorney in part B
of the Superior Court in the Judicial District of Fairfield, identified the
hand writing in the file as his own and testified as to the contents of the

file.  The file contained numerous notations by Marcello documenting instructions from his superior Donald Brown, then the States Attorney for the Judicial District of Fairfield, concerning Youngers case.  These notations included the following; June 27, 1994, Sergeant Sherbo, Younger gave good info on 2 murders and will notify States Attorney Brown per his instructions; June 27, 1994, State will do nothing without detail written letter;  August 8, 1994, Brown says release on PTA case Younger is to testify on is still pending DO NOT DISPOSE until consulting part A;  November 23, 1994, spoke with Brown continue until the end of January do not dispose without seeing me (Joe Marcello) I have to consult with Brown before disposing;  March 15 1995, spoke with Brown he instructed us not to dispose of this file until the part A case is over Younger is to testify in part A case.  He said to continue 2 more months;  January 23, 1996, spoke with States Attorney Brown Younger was outstanding witness in a murder case testified for Robert Satti and help obtain a conviction.  Because of youngers cooperation 5yrs E/S 3 years probation.

At the hearing the State also produced a letter dated September 28, 1994 from Youngers Attorney Catherine Teitell and addressed to Brown, which stated in relevant part an assistant states attorney suggested a long continuance in this case for the purpose of speaking with you regarding a disposition in light of Youngers cooperation in the investigation of one of your cases in part A...Younger presents himself as a mature, respectful, educated well spoken man of 33 and will make an excellent witness if called upon in the future to testify.

Also discovered was a letter written by Detective Joseph Sherbo to Assistant States Attorney Marcello in November of 1994 detailing Youngers Cooperation in two pending murder investigations.

Basis For Evidentiary Hearing:

A evidentiary hearing should be granted in this case, because the Appellate Court and the Supreme Courts decision is at odds with established principle of Federal and State Constitution law.  That a conviction obtained by the knowing use of false testimony is fundamentally unfair and deprives the defendant of a fair trial.  Napue v. Illinois 360 US. 264, 269, 79 S.CT 1173, 3L.Ed 2d 1217 (1959), Giglio v. United States, 405 US. 150, 153, 92 S.CT 763, 765, 31 L.Ed. 2d 104 (1972), State v. Cohane, 193 CONN 474, 499, 479 A.2d 763 (1984), State v. Goodson 84 CONN App 786, 803, 856 A.2d 1012 cert denied 271 CONN 941 (2004) and is based on a flawed reading of the Supreme Courts prior decision in the petitioners direct appeal.  State v. Floyd 253 CONN 700, 756, A.2d 799 (2000).

The petitioner states that his due process rights under the 5th and fourteenth amendments to the U.S. Constitution were violated, because the prosecutoriol misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process, Darden v. Wainwright 477 US 168, 181, 106 S.CT 2464, 91 L.Ed 2d 144 (1986).  A conviction obtained by the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury, Napue v. Illinois, 360 US 264, 269, 271, 79 S.CT 1173, 3 L.Ed 2d 1217 (1959), United States v. Bagley 473 US 667, 679 105 S.CT 3375 87 L.Ed 2d 481 (1985).  A prosecutors failure to disclose that testimony used to convict a defendant is false is reviewable under the "First Situation" standard set forth in United States v. Agurs 427 US 97, 104, 49 L.Ed 2d 342 96 S.CT 2392 (1976).  Agurs discusses three seperate situations where information favorable to the accused is discover-

3

ed after trial that had been known to the prosecution, but was unknown to the defense and discusses their reviewability on appeal. The first situation occurs when the prosecution knowingly uses perjured testimony or equivalently, the prosecution knowingly fails to disclose that testimony used to convict the defendant was false, at 103-104. In such situations, courts apply a strict standard of materiality, because they involved a corruption of the truth seeking function of the trial process and for this purpose the petitioner requests an evidentiary hearing, because the States Key witnesss testimony was false and the prosecutor reiterated it in his closing argument.

Established Facts:

It is well established that after Younger gave the statement against the petitioner the State had indeed given Younger substantial consideration. Joseph Marcello, the Supervisory Assistant Attorney in part B of the Superior Court in the Judicial District of Fairfield, identified hand writing as his own (see Floyd supra 733) documenting instructions from his superior Donald Brown to release Younger on PTA. Case Younger is to testify on is still pending. It is also established that Younger was facing a violation of probation based on his June 1994 drug arrest, but District Attorney Donald Brown intervened and this is proven by Youngers Attorney Catherine Teitells testimony during hearing which was conducted on August 17, 1998, pg. 99. "Don Browns say went a long way in connection with the probation status problem". It is also established that the state requested numerous continuances in Youngers pending drug case and that the State was well aware that Youngers case was going to be disposed of once he testified. On November 17, 1995 (see Floyd 755) the State requested another continuance in Youngers

GA2 case until January 5, 1996 (after petitioners trial) "for further in-
vestigaition" the court asked what a case so old was doing on the disposition
docket, the State replied that "I dont think its going to provide business...
for the jury docket once our investigation is complete" and the States
Attorneys statement was correct after Younger testified in the petitioners
murder case the State gave Younger a suspended sentence, because of his tes-
timony. According to District Attorney Marcello (8/31 HT 31-32) "January
23, 1996 spoke with States Attorney Brown, Younger was outstanding witness
in a murder case testified for Robert Satti helped obtain a conviction.
Because of Youngers cooperation 5yrs E/S 3 years probation. It could be
further proven that Younger was aware that a substantial amount of consider-
ation was given to him. Youngers attorney stated that she had disscused
with him that his cooperation with the State was a major factor in getting
a favorable disposition in his case and that he owed his PTA to the inter-
vention of the States Attorney himself...

### Youngers Testimony That He Received No Consideration Was False

In petitioners direct appeal, the Supreme Court specifically held that
the State had information in its files that showed it had given Younger
favorable consideration with respect to his pending drug charges and probation
violation and that his favorable treatment had been suppressed, State v.
Floyd supra at 741-2. That is the law of this case it follows that Youngers
testimony that he had <u>not</u> received any consideration was false and that the
information proving its falsity was in the States file at the time of the
trial. Moreover, it is equally clear that Assistant States Attorney Satti
did not inform the court or the jury that Youngers testimony denying he

received consideration for his testimony was false.  Rather, he repeated

Youngers false assertion in his rebuttal closing argument.

## The Prosecutor Had Knowledge of Youngers False Testimony

A conviction obtained through knowing use of false evidence known to

be such by representatives of the State violates the fourteenth amendment

"Napue v. Illinois, supra at 269".  The States duty of disclosure is imposed

not only upon its prosecutor, but also on the State as a whole, including

the investigation agencies, United States v. Bryant 142 US App DC 132, 439

F 2d. 642 (DC Cir) on remand, 331 F. Supp 927 (D.D.C) affd 145 DC App 259,

448 F.2d 1182 (DC Cir, 1971).  The reason for this rule is that the deception

which results from negligent nondisclosure is no less damaging than that

deception which is a product of guile, and such negligent nondisclosure

entitles a defendant to relief "Martinez v. Wainwright 621 F.2d 184-187-88

(5th Cir 1980)".  The same result obtains when the State, although not soli-

citing false evidence allows it to go uncorrected when it appears, Napue

supra at 264.  Deliberate deception of the court and jurors in the presen-

tation of known false evidence is incompatible with rudimentary demands of

justice, Giglio v. United States 405 US 150, 153, 31 L.Ed. 2d 104, 92 S.CT

763 (1972).

The fact pattern in this case is virtually identical to what occurred

in Giglio v. United States.  In that case one assistant U.S attorney promised

immunity to a witness, but failed to tell another assistant in the same office

who then tried the case and stated in his summation that no promises had

been made to the witness.  According to the Supreme Courts opinion:

"The Prosecutors office is an entity and as such its the spokesman for the

Government.  A promise made by one attorney must be attributed, for these

6

purposes, to the government. <u>See restatement (second) of agency 272</u>. See
also, <u>American Bar Association, project on standards for criminal justice,
discovery and procedures before trial 2.1 (d)</u>. Giglio supra 405 US at 153".

    In this case, States Attorney Donald Brown had a file in his office de-
tailing the consideration given to Younger in his pending part B cases.
Floyd, supra at 742. The Connecticut Supreme Court has already held that,
because the state possessed the information about the favorable consideration
given to Younger, the prosecutor who tried the case was charged with knowing
about it. Id. at 742, 748. Under Giglio, knowledge of the favorable treat-
ment Younger received from Brown is attributed to Satti. Giglio supra at
154. Thus, as a matter of law, Attorney Sattis actions were "knowing".


### Youngers False Testimony


    During petitioners murder trial, petitioners lawyer asked Younger if
the reason why his June 1994 narcotics charges had not been taken care of
"is because youre waiting for until the outcome of what happens in this case"?
Younger answered, "I dont know" 12/5T 155 and it is evident from the record
that this is untrue, because on November 17, 1995 the state requested another
continuance in Youngers GA2 case until January 5, 1996 (after petitioners
trial) "for further investigation" and when the court asked what a case so
old was doing on the disposition docket, the state replied that "I dont think
its going to provide business...for the jury docket once our investigation
is complete". So, from this we can conclude that before the petitioners
trial there was a plan to recommend to higher authority substantial benefit
to Younger in the form of at least a suspended sentence and Youngers Attorney
Teitell stated that she had discussed with Younger that his cooperation with
the state was a major factor in getting a favorable disposition of his case
8/31 HT 3-6. Furthermore, Younger was asked during the petitioners murder

trial during cross exam "and its your testimony that theres been no consideration given to you to help the state try and get a conviction against Mr. Floyd" Younger stated, "not to my knowledge" 12/5T 158. As facts can prove Youngers testimony was false with regards to this testimony. As well Youngers Lawyer Teitell agreed that the states position on a PTA was a major factor in leading her to conclude that Youngers cooperation with the state in the part A case could favorably influence the disposition of his own case, 8/31 HT 20. So, it is a fair inference that she told him that he owed his PTA to the intervention of the States Attorney himself. Also, during cross examination, Younger testified that at the time of his arrest he did not ask the police for any consideration in exchange for the information that he had given in this case and that he believed "the police cant make deals for you in court". It has been proven during the petitioners state habeas trial that this testimony was also false. A letter was introduced, written by Detective Sherbo of the Bridgeport Police Department addressed to Assistant States Attorney Joseph Marcello, detailing Youngers cooperation with the police in two pending murder investigations. Sherbo was questioned about the circumstance surrounding the preparation of the letter when asked by the petitioners counsel what caused him to write that letter, Sherbo said, "Mr. Younger asked me to write in consideration for after he gave the statement" Tr 9/26/04 pg 143.

Prosecutor Misconduct:

It is well established that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is any reasonable likelihood that the false testimony could have effected

the judgment of the jury, Napue v. Illinois 360 US 264, 269, 79 S.CT 1173, "The same results obtained when the state, although not soliciting false evidence, allows it to go uncorrected when it appears Id., at 269.  Giglio v. United States 405 US 150, 153, 92 S.CT. 763, 765 L.E.D 2d 104 (1972) cited in State v. Cohone 193 CONN 474, 499, 479 A.2d 763 (1984), Law enforcement officers, as well as prosecutors, are part of the "State" for purpose of enforcing the constitutional obligation to disclose false testimony by state witness.  Demers v. State, 209 CONN 143, 153 547 A.2d 28 (1988), Thus, under the applicable legal standards, both the prosecutor and the police had an affirmative obligation to advise the trial court of Mr. Youngers false testi- mony, which they did not do.  The prosecutorial misconduct in this case was twofold.  First, the state knowingly withheld evidence bearing directly on the credibility of one of its two eyewitnesses, Michael Younger, who had been granted favorable consideration from the state in exchange for his testi- mony.  This evidence was withheld from the defendant and from the jury. In fact, the problem was exacerbated when the prosecutor in his rebuttal closing argument implicitly vouched for Youngers credibility by saying there was "no evidence" that Younger and the other state witness had received any consideration.  Second, the state engaged in a pattern of withholding ex- culpatory evidence, violation of its brady obligations, beginning with the HPC disclosure and continuing into trial.

## States Knowing Use Of Younges False Testimony Was Material and Prejudicial

"Where testimony is perjured, it is considered material unless failure to disclose it would be harmless beyond a reasonable doubt", Agurs, supra 427 US at 104 "The Supreme Court has consistently held that a conviction

obtained by the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury", Id at 269, There is a heightened opportunity for prejudice where the prosecutor, either by action or inaction is complicit in the untruthful testimony, Dubose v. Lefeure 619 F.2d 973, 978 (2d cir 1980). It is well established that false evidence as to a witness credibility can be determinative of guilt or inno- cence, Napue, supra at 269. "Unquestionably agreements...to reward testimony create an incentive on the witnesss part to testify favorable for the state and the existance of such an understanding is important for the purpose of impeachment", Dubose, supra at 979, Agurs, supra 427 US at 103. There may be a deprivation of due process if the prosecutor reinforces the deception by capitalizing on it in closing arguments..Mills v. Scully, 826 F.2d 1192, 1195 (2d cir 1987), Jenkins v. Artuz 294 F.3d 284, 294 (2d cir 2002). For the jury to reach an accurate conclusion as to Youngers credibility it needed to hear about the favorable treatment he had already received and also about what he expected to receive in exchange for his testimony against the peti- tioner. Instead, the jury was lied to and was misled by the prosecutor into believing the Younger received No favorable treatment. This false impression improperly bolstered Youngers credibility in the eyes of the jury and hence violated the petitioners due process right. Similarly, the prosecutors iteration of Youngers false testimony that he received NO CONSIDERATION during his rebuttal summation "Plainly sharpened the prejudice" by giving him undue credibility in the eyes of the jury, Jenkins, supra at 294.

## Applicable Legal Standard

The petitioner contends that the prosecutor knowingly presented false

testimony during his trial, "A state denies a criminal defendant due process when it knowingly uses perjured testimony to go uncorrected", Faulder v. Johnson 81 F.3d 515, 519 (5th cir) (citing Napue v. Illinois 360 US 264 3 L.Ed 2d 1217, 79 S.CT 1173 (1959). To obtain a reversal based upon prosecutors use of perjured testimony a habeas petitioner must demonstrate that (1) the testimony was actually false, (2) the state knew it was false, (3) the testimony was material, see Id; Blackmon v. Scott 22 F.3d 560, 565 (5th cir 1994).

Argument

The petitioner has demonstrated that Youngers trial testimony was false when he testified in the petitioners murder trial that there has been no consideration given to him from the state for his testimony or that upon his arrest for drugs he didnt ask the police for any help with his own case for giving the statement implicating the petitioner in the January 21st 1994 murder. Moreover, it is equally clear that Assistant States Attorney Satti did not inform the court or the jury that Youngers testimony denying he received consideration for his testimony was false. Rather, he repeated Youngers false assertion in his rebuttal closing argument, and furthermore stated that there was no evidence to prove that Younger was given consideration which was false and misleading, because there was evidence, but the state suppressed it; During a grievance hearing which was conducted on June 3, 2004 Floyd v. Satti, the prosecutor who handled the petitioners murder trial was asked:

Q: When you stated that there was no evidence to refute that Michael Younger was given consideration wasnt that a lie?

A: No sir.

Q: How is it not a lie when there was evidence that he was given consideration?

A: There is no evidence of him giving me actually, with me having that information.

So, it is clear that Satti is saying, since he didn't know about the information its not a lie, but this is not the law. In a similar case, as the petitioner's, United States v. Butler 567 F.2d at 889, "Moreover, even if the prosecutor's conduct could be explained by a lack of knowledge of promise made to his principle witness, he would still be responsible for the consequences of his nondisclosure. The Supreme Court said in Giglio v. United States 405 US 150, 154, the prosecutor's office is an entity and as such it is a spokesman for the government. A promise made by one attorney must be attributed to the next": Therefore, as the Supreme Court stated in State v. Floyd at 742 "Because the states possessed the information about the favorable consideration given to Younger the prosecutor who tried the case was charged with knowing, "The prosecutor's denial of consideration in front of the jury was prejudicial for many reasons. In explaining the first paradigm in United States v. Argus 427 US 97, 96 S.CT 2392 49 L.Ed 2d 342 (1976) The United States Supreme Court noted that its "strict standard of materiality" should be applied where prosecutorial misconduct creates "A corruption of the truth seeking function of the trial process", United States v. Agurs, supra 104. The reference in Argus to "perjured" testimony must be taken to include testimony known to the state's attorney to be false or misleading even if the witness may not have such an awareness. Here, the state's attorney's actions in failing to disclose all the notations in Younger's part B file along with the letter from Teitell (Younger's lawyer) asking for a favorable disposition in light of Younger's cooperation, along

with the letter from Det. Sherbo, corrupted the trial process and denied the defendant his constitutional right to a fair trial just as surely as if the state's case included perjured testimony "As long ago as Mooney v. Holohan 294 US 103, 112 (55 S.CT 340 79 L.Ed. 791) (1935), this court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice. What is even more prejudicial is how during the petitioner's murder trial the state's attorney argued in front of the jury the circumstance surrounding the letter Det. Sherbo sent to the state's attorney for Reginald Barry:

Q:  Wasn't there a deal between you and the Bridgeport Police Mr. Barry in relationship to that statement?

A:  Now that I know of.

Q:  All right and aren't you upset with the Bridgeport Police, because they never came through on their end of the deal?

A:  I don't remember, I don't recall.

Then the state asked Barry:

Q:  Were you aware sir that the Bridgeport Police wrote a letter to the State's Attorneys Office on your behalf in relationship to you giving this statement on February 15, 1994?

A:  No, I don't (T/T 12/5/95 pg.  69, 70).

The state attorney was trying to show a motive why Mr. Barry was recanting his testimony that he never wrote a statement against the petitioner and even introduced a similar letter as Mr. Younger's from Det. Sherbo written on behalf of Mr. Barry which happened to be in Barry's part B file. Det. Sherbo testified with regards to the purpose of sending the letter:

Q:  And after Mr. Barry gave a statement to you and the other Bridgeport Police Officers did you at some time as a commander of the Detective Bureau

submit a written documentation of Mr. Barry's giving the statement to the States Attorneys Office?

A: Yes.

Q: And what was the purpose of that sir?

A: To show that he was...I believe he had something going within the court system and just to show his cooperativeness in this matter (see T/T 12/5/95 pg. 100).

And for this and additional reasons the petitioner states that his original trial was tainted by prosecutor misconduct which occurred through out his trial and post conviction hearings as explained previously the state's attorney who handled the petitioner's murder trial argued to the jury that the reason Mr. Barry was recanting his statement was because the police never came through on their end of the deal and he was upset because he received jail time. The state implied through the introduction of Det. Sherbo's letter for Mr. Barry that Mr. Barry had a deal, but the police never came through on their end, so, Mr. Barry was now recanting his statement. Det. Sherbo wrote an identical letter for Mr. Younger to the D.A., but the state never disclosed it, therefore, the jury was unaware of it. The state argued in front of the jury that Mr. Younger had no deal with the state and received no consideration from the state for his testimony and in all post conviction hearing s argued that the letter form Det. Sherbo was of no importance. But from the record it is established otherwise. On the hearing which was conducted on August 17 & 31, 1998. Younger's attorney was questioned about the notations in her files (H/T pg. 24):

Q: Tell me the first date your handwriting appears on that page.

A: Looks like June 27th that's my first notation.

Q: What does that indicate?

14

A: The written notation says; State will do nothing without written letter.
Then on 7/24/94 the file indicates "Ask the state to contact Sherbo" and
when asked what that means Attorney Tietell stated:

A: Its my understanding Donald Brown (Head D.A) required some kind of written
confirmation from the officer to be in his file (H/T of August 17, 1998
pg. 100).

Subsequently, right after this, as the record will reflect Donald Brown
had Mr. Younger released on a PTA (See notations in D.A Marcello's file,
August 8, 1994. Brown says release on PTA case Younger is to testify on
is still pending do not dispose of until consulting partA). The petitioner
has demonstrated that the information that the state withheld was vital to
his defense, because it would have proved that Younger's testimony was false
when he stated that he had no deal with the state or the police and that
he hadn't received any consideration for his testimony. This could have
been proven by the states own argument concerning Det. Sherbo's letter for
Mr. Barry when the state argued that Mr. Barry had a deal with the police,
but the police never held to their end of the deal and Mr. Barry went to
jail, therefore, he's recanting his statement. On the other hand Det. Sherbo
wrote a letter for Mr. Younger to the D.A., because Younger asked him to.
Mr. Younger received a PTA, no violation of probation and no jail time for
his drug case and the state argued that Mr. Younger had no deal or received
any consideration for his testimony. Armed with this information, the state
would have to have conceded that Younger received consideration, because
the state already argued through the introduction of Det. Sherbo's letter
for Mr. Barry to the D.A.'s office that Barry had a deal with the police.

In deciding that the evidence was immaterial, the state relies on the
fact that there was additional evidence to convict. This evidence consisted

15

of the the testimony of two witnesses, Alex Delgado and Reginald Barry.
But as the majority stated in Kyles v. Whitley 514 US 419, 115 S.CT 1555
(1995) FN:8 "This rule is clear and none of the brady cases have ever suggest-
ed that sufficiency of evidence (or insufficiency) is the touchstone". Yet
the dissents appear to assume that Kyles must lose, because there would still
have been adequate evidence to convict even if the favorable evidence had
been disclosed. As the Kyle's court made clear, the test for materiality
is not a sufficiency of the evidence test Id. 434-35 "A defendant need not
demonstrate that after discounting the inculpatory evidence in light of the
undisclosed evidence there would not have been enough left to convict" Id.
"Indeed, a sufficiency of the evidence test would require appellate courts
to usurp the function of the jury, for judges would be forced to guess, based
on a cold record, how the jury might have weighed the remaining evidence,
standing alone, in a hypothetical error-free trial. Because such an inquiry
is inherently unreliable, Kyles rightly focuses attention instead on the
potential impact the undisclosed evidence might have had on the fairness
of the proceedings". And the United States Supreme Court has already noted
that its strict standard of materiality should be applied where prosecutorial
misconduct creates a corruption of the truth seeking function of the trial
process, United States v. Agurs, supra 104 and the district attorney in the
petitioner's murder trial did just that, "created a corruption of the truth
seeking function of the trial" when he failed to disclose the information
pertaining to Mr. Younger.

Furthermore, in fact, the brady rule has its roots in a series of cases
dealing with convictions based on the prosecution's knowing use of perjured
testimony. In Mooney v. Holohan 294 US 103, 55 S.CT 340 79 L.Ed. 791 (1935)

the court established the rule that the knowing use by a state prosecutor of perjured testimony to obtain a conviction and the deliberate suppression of evidence that would impeach and refute the testimony constitutes a denial of due process. And the rule that a conviction obtained by the knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury's verdict derives from Napue v. Illinois supra, (see FN. 8 Napue antedated). Chapman v. California 386 US 18, 23, 87 S.CT 824 17 L.Ed 2d 705 (1967) Where the "harmless beyond a reasonable doubt" standard was established. The court in Chapman noted that there was little, if any difference between a rule formulated; As in Napue, in terms of "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" and a rule "requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict". It is therefore clear, as indeed the petitioner concedes, that this court's precedents indicate that the standard of review applicable to the knowing use of perjured testimony is equivalent to the Chapman harmless-error standard "where testimony is perjured, it is considered material unless failure to disclose it would be harmless beyond a reasonable doubt", Agurs supra, 427 US at 104.

For the foregoing reasons the petitioner states that Younger's false testimony was material, because it contributed to the petitioner's conviction. As proven through District Attorney Marcello's notations, "January 23, 1996 spoke with State's Attorney Brown, Younger was outstanding witness in murder case testified for Robert Satti. Helped obtain a conviction, because of Younger's cooperation 5yrs E/S 3 years probation. This information complained of is debatable among jurists. In its decision on the petitioner's direct

appeal, the Supreme Court held that the state had suppressed exculpatory information in its possession as to favorable treatment given to Younger, one of three eyewitnesses who testified at trial, but a 3-2 majority held that it was not "material" within the meaning of Brady v. Maryland 373 US 83, 86 S.CT 1194, Id L.Ed 2d 215 (1963) and its progeny Floyd supra at 742. The two dissenters strenuously disagreed with the majority's conclusion holding that the none disclosed information was clearly material, (see Floyd supra, at 749 (Katz dissenting). Then once again when the majority stated that there was nothing in the record to prove that Younger's testimony was false are misleading, the dissents disagreed, (see Floyd supra, at 756). Then a month after the petitioner's direct appeal in a similar case as the petitioner's, Judge McDonald, of the Connecticut Supreme Court (a judge who was not on the petitioner's panel at the time of the petitioner's direct appeal) dissented in State v. Wilcox 254 CT 441, and used the petitioner's case as case law to back up his argument: Then during the petitioner's state habeas trial, Eric Floyd v. Warden State Prison: Judge Rittenband was commenting on the Supreme Court's ruling on the petitioner's direct appeal that there was no deal with Younger to testify, (see habeas hearing of August 16, 2004 at pg. 163):

The Court: Well, how can someone say that there was no deal when Donald Brown went to the GA and as I understand it, told the prosecutor to let him out on a promise to appear.

The Supreme Court also stated in the petitioner's direct appeal that "THERE WAS NOTHING IN THE RECORD TO SUGGEST THAT YOUNGER'S TESTIMONY WAS FALSE OR INTENTIONALLY MISLEADING" when he testified that there has been no consideration given to him for his agreement to testify or that at the time of his arrest he did not ask the police for help, Floyd supra, at 744-45.

During the petitioner's habeas trial Det. Sherbo was questioned about the letter he sent to the D.A. for Younger and asked by petitioner's counsel what caused him to write the letter, Sherbo stated:

A: Mr. Younger asked me to write in consideration for after he gave the statement.

This information wasn't before the Supreme Court, but the appellant court stated in Floyd v. Commissioner of Corrections "Our Supreme Court however, affirmed the factual finding that there was no pleas agreement between Younger and the state. The prosecutor's remarks in closing argument were not based on false testimony". This decision is based on a flaw reading of the petitioner's case.

During the petitioner's murder trial, Younger was asked, "And its your testimony that there's been no consideration given to you to help the state get a conviction against Mr. Floyd"? Younger stated, "Not to my knowledge", 12/5 T/T pg. 158. But the Supreme Court found in the petitioner's direct appeal that the state had suppressed information proving the state had given Younger consideration. So, for arguable reason, lets just say that the Supreme Court was correct in finding there was no deal, it would still be undisputed that the language used was prejudicial when Younger stated there has been no consideration given to him. This testimony was false and misleading. Furthermore, the prosecutor's closing argument was false and misleading. The prosecutor argued to the jury that Mr. Younger testified that there's been no consideration given to him, and there is no evidence to refute that. No evidence at all to refute that. But the truth of the matter is there was, but the state suppressed it.

For these reasons stated above the petitioner prays that this motion be granted and an evidentiary hearing be conducted.

<u>Foregoing</u>

For the following reasons the petitioner prays this court will grant this motion to insure that justice has been served.

After hearing this motion it is hereby:

Granted/Denied

Respectfully Submitted,

Eric Floyd

# CERTIFICATION

I herby certify that a copy of this motion was mailed to James A. Killen and Joanne Sulik, Assistant State's Attorney, 300 Corporate Place, Rocky Hill, Conn on this 2nd day of July 2007.

Respectfully

Eric Floyd

Eric Floyd 155356
1153 East St South
Suffield Conn

06080