UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ERIC FLOYD,                          :
        Petitioner,                  :
                                     :        PRISONER
        v.                           : CASE NO.  3:01-cv-1221(CFD)
                                     :
BRIAN MURPHY,                        :
        Respondent.                  :

**RULING ON AMENDED PETITION FOR WRIT OF HABEAS CORPUS
AND MOTION FOR EVIDENTIARY HEARING**

Petitioner Eric Floyd, currently confined at the State of
Connecticut MacDougall-Walker Correctional Institution in
Suffield, Connecticut, brought this action for a writ of habeas
corpus pursuant to 28 U.S.C. § 2254.  He challenges his
conviction for murder and criminal possession of a firearm.  In
addition, Floyd asks the court to conduct an evidentiary hearing
on his habeas petition.  The latter will be addressed first, then
the substance of the petition.

**I.    Evidentiary Hearing**

Situations under which the court will hold an evidentiary
hearing in a habeas action have been limited by the Supreme Court
and Congress.  See Nieblas v. Smith, 204 F.3d 29, 31 (2d Cir.
1999).  Floyd asks this court to conduct an evidentiary hearing
"to determine if the State allowed their key witness to commit
perjury when he testified for the State in the defendant's murder

trial."  Doc. #36 at 1.[1]

An evidentiary hearing is required only when the petitioner can establish cause for his failure to develop an adequate factual record below and prejudice resulting from that failure. See Keeney v. Tamayo-Reyes, 504 U.S. 1, 5-6 (1992).  Floyd acknowledges that the Connecticut Superior Court conducted a hearing concerning the facts underlying this claim.  See Doc. #36 at 2.  Because a factual record was developed below, an evidentiary hearing is not mandatory.

The relevant standard for whether a habeas petitioner may be entitled to an evidentiary hearing is statutorily prescribed by 28 U.S.C. § 2254(e)(2).  The district court cannot conduct an evidentiary hearing unless the petitioner shows that "(A) the claim relies on– (i) a new rule of constitutional law" or "(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence" and "(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2254(e)(2).

Floyd argues that an evidentiary hearing in this court is needed because he disagrees with the resolution of the issue by

---

[1]  That witness was Michael Younger, whose trial testimony is discussed infra.

the state appellate courts.  <u>See</u> Doc. #36 at 3.  His claim that the State offered perjured testimony does not rely on a new rule of constitutional law and Floyd identifies no factual predicate that he was prevented from developing in the state court proceedings.  In addition, he has made no showing that, but for the alleged error, he would have been found not guilty.  Thus, he fails to meet the requirements for an evidentiary hearing under section 2254(e)(2).

Floyd's motion for evidentiary hearing [**Doc. #36**] is **DENIED**. The court will rule on the petition for writ of habeas corpus based on the current record.

## II.  Petition for Writ of Habeas Corpus

### A.    Procedural Background

In April 1994, Floyd was arrested and charged with the Connecticut state charges of murder, attempted murder of a second individual, commission of a felony with a firearm and criminal possession of a firearm.  On December 8, 1995, after a jury trial in the Connecticut Superior Court for the Judicial District of Fairfield, Floyd was found guilty of murder, commission of a felony with a firearm and criminal possession of a firearm.  He was acquitted on the charge of attempted murder.  Floyd was sentenced to a total effective term of imprisonment of fifty-five years.  <u>See</u> <u>State v. Floyd</u>, 253 Conn. 700, 705, 756 A.2d 799, 804 (2000) ("<u>Floyd I</u>").

On direct appeal, Floyd challenged his conviction on three grounds:  (1) the trial court improperly instructed the jury on accessory liability, (2) the State failed to disclose impeachment evidence relating to one of the State's witnesses, and (3) the prosecutor made an improper "missing witness" argument during summation.  On July 25, 2000, the Connecticut Supreme Court vacated the conviction for commission of a felony with a firearm[2], but affirmed the criminal judgment in all other respects.  See id. at 702-03, 756 A.2d at 803.

Floyd commenced this action by a petition dated June 13, 2001.  In the original petition, Floyd challenged his conviction on two of the grounds from his direct appeal, the failure to disclose impeachment information and the missing witness argument.  See Pet., Doc. #1 at 6, 8.  On March 5, 2003, the court granted Floyd's request to stay this action to enable him to return to state court to raise several additional claims.  See Doc. #21.

Floyd then filed a state habeas corpus action challenging his conviction on two additional grounds:  (1) trial counsel was ineffective because he failed to adequately investigate and develop a claim that other persons committed the murder ("third party liability") and (2) the State failed to disclose

---

[2] The court raised this issue sua sponte.  See Floyd I at 703 n.14, 756 A.2d at 803 n.14.

exculpatory information.  After conducting a hearing on the
merits of Floyd's claims, the state court denied the petition.
On appeal, Floyd also argued that the State offered perjured
testimony at his trial.  On February 13, 2007, the Connecticut
Appellate Court affirmed the denial of his habeas petition.  See
Floyd v. Commissioner of Correction, 99 Conn. App. 526, 529, 914
A.2d 1047, 1052 ("Floyd II"), cert. denied, 282 Conn. 905, 920
A.2d 308 (2007).

        In February 2007, Floyd filed an amended petition here and
moved to lift the stay.  The court has granted Floyd's requests,
and now considers the six grounds for relief contained in his
amended petition.

        **B.    Factual Background**

        The Connecticut Supreme Court determined that the jury could
reasonably have found the following facts.  In the early morning
of January 21, 1994, Alex Delgado and Jose Avellanet were walking
on Clinton Avenue in Bridgeport, Connecticut.  Floyd approached
them holding a nine millimeter handgun and asked what they were
doing in that area of the city.  Delgado, who had known Floyd for
several years, replied that they were just walking on the street.
Floyd accused Delgado and Avellanet of being there to rob him.
An unidentified person then punched Delgado in the back of his
head and knocked him down.  Delgado got up, stated again that
they were just walking down the street and asked permission to

5

leave.  Floyd then fired his gun several times at the ground near Delgado's feet.  Delgado offered Floyd money and, once again, asked that they be permitted to leave.  Floyd took Delgado's money and jewelry and the unidentified person took Avellanet's money.  See Floyd I, 253 Conn. at 703, 756 A.2d at 803.

Floyd then called the name "Mickey" and two men started running down the street toward Floyd.  Delgado did not recognize either man.  Delgado turned and ran.  As he was running he heard several gunshots toward him and ricochets.  Floyd shouted at Delgado to come back.  Delgado ran around a corner and could no longer see Floyd or Avellanet.  However, two other eyewitnesses saw Floyd and "Mickey" fire multiple gunshots at Avellanet, who was then lying on the ground.  See id. at 704, 756 A.2d at 803-04.

Later that morning, paramedics responded to an emergency call and found Avellanet.  They observed that he had sustained multiple gunshot wounds, and had expired.  The autopsy revealed three gunshot wounds, one causing death, a second potentially fatal.  The medical examiner recovered a nine millimeter bullet from Avellanet.  In addition, four spent nine millimeter casings along with .45 caliber bullets and casings were recovered from the crime scene.  A forensic specialist testified that the bullets and casings came from at least four different weapons. See id., 756 A.2d at 804.

6

**C.   Standard of Review**

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  See 28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  See Estelle v. McGuire, 502 U.S. 62, 68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002).  Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision.  See Carey v. Musladin, ___ U.S.

7

___, 127 S. Ct. 649, 653 (2006).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court, or if it decides a case differently than the Supreme Court on essentially the same facts. See Bell v. Cone, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it also must be objectively unreasonable, "a substantially higher threshold." Schriro v. Landrigan, ___ U.S. ___, 127 S. Ct. 1933, 1939 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Boyette v. Lefevre, 246 F.3d 76, 88-89 (2d Cir. 2001) (noting that deference or presumption of correctness is afforded state court findings where state court has adjudicated constitutional claims on the merits). Because collateral review of a conviction applies a different standard that the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. See Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

**D.   Discussion**

Floyd challenges his conviction on six grounds: (1) the trial court inadequately instructed the jury on the essential elements of accessory murder, (2) the State failed to disclose potential impeachment evidence concerning a key prosecution witness, (3) the State failed to timely disclose two witness statements, (4) the State offered perjured testimony and reiterated the perjury during closing argument, (5) the prosecutor made an improper "missing witness" argument during closing argument, and (6) Floyd's trial counsel was ineffective.

**1.   Improper Jury Instruction**

Floyd first argues that the trial court improperly instructed the jury on accessory liability.[3] He focuses on one sentence of the instructions where the court informed the jury that "it is of no consequence that the evidence may not clearly establish that the death of Jose Avellanet was caused by the defendant or any accomplice . . .." Pet., Doc. #31, at 3.

To warrant habeas corpus relief, Floyd must establish that the instruction "by itself so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991); see also Cupp v. Naughten, 414 U.S. 141, 146 (1973) (petitioner must show "not merely that the instruction

---

[3] This issue was addressed in the trial court's charge to the jury because at least one other person was shooting at Avellanet, and the number of gunshot wounds.  253 Conn. at 704.

is undesirable, erroneous, or even 'universally condemned,' but
that it violated some right which was guaranteed by the
Fourteenth Amendment"). When analyzing a claim of an improper
jury instruction, the court must consider the instruction in the
context of the charge as a whole and the entire trial record.
See id. at 72.

On direct appeal, the Connecticut Supreme Court considered
the challenged instruction in the context of the entire charge
and analyzed whether the charge "fairly present[ed] the case to
the jury in such a way that injustice is not done to either party
under the established rule of law" and, as the court was
reviewing a constitutional challenge, ensured that the
instruction did not mislead the jury.  Floyd I, 253 Conn. at 714,
576 A.2d at 809.  Although the Connecticut Supreme Court did not
cite U.S. Supreme Court cases, it did apply the proper standard
in reviewing this claim.  Thus, the decision is not contrary to
Supreme Court law.  Floyd may obtain federal habeas relief on
this claim only if the state court decision was an unreasonable
application of that standard to the facts of this case.

Just prior to the challenged language, the trial court
instructed the jury that, if the jury "simply [doesn't] know
which [person caused the fatal injury], but ... w[as] satisfied
beyond a reasonable doubt it was one or the other, that would
constitute proof."  Answer, Doc. #14, App. F. at 392.  Following

the language at issue, the trial court explained the law on accessory liability and instructed the jury that if it were satisfied that both Floyd and "Mickey had the intent to cause the death, ... the fact that you cannot specifically [co]nclude which one fired the fatal shot would not prevent you from finding the defendant here guilty as a principle [sic]." Id. at 394.

The trial court emphasized that, to establish accessory liability, it must find that Floyd must have done "more than passively acquiesce" or "instantly do [a] certain act, which in fact did aid in the commission of the offense." He must have had "a criminality of intent and unlawful purpose in common with the actual perpetrator of the crime." Id.

After reviewing the sentence in context, the Connecticut Supreme Court concluded that the instruction did not mislead the jury. The charge as a whole repeatedly emphasized that "the jury could convict the defendant of murder, even if it could not determine whether the fatal gunshot wound was inflicted by the defendant or by an accomplice, and that it must be convinced beyond a reasonable doubt that it was one or the other that inflicted the fatal gunshot wound." Floyd I, 253 Conn. at 718, 576 A.2d at 811. Thus, the Connecticut Supreme Court concluded that the instructions, as a whole, were proper.

The Connecticut Supreme Court properly considered the language in context and evaluated the propriety of the charge as

11

a whole.  After reviewing the charge and considering the
Connecticut Supreme Court's analysis, this court concludes that
the determination of the Connecticut Supreme Court was not an
unreasonable application of Supreme Court law.  The petition for
writ of habeas corpus is denied on this ground.

### 2.    Disclosure of Evidence

In his second and third grounds for relief, Floyd contends
that the State failed to disclose important impeachment evidence,
a portion of a police report, and also failed to timely disclose
two statements.  Because these grounds involve the obligation to
disclose exculpatory evidence, the court considers them together.

The State's failure to fulfill its disclosure obligations
under Brady v. Maryland, 373 U.S. 83 (1963), may implicate
constitutional rights and therefore may entitle a habeas
petitioner to collateral relief.  A Brady violation encompasses
three elements:  (1) the evidence must be favorable to the
criminal defendant, either because it is exculpatory or because
it will impeach government witnesses; (2) the government
suppressed the evidence, either wilfully or inadvertently; and
(3) the criminal defendant was prejudiced by the suppression of
evidence.  See Boyette v. Lefevre, 246 F.3d 76, 89 (2d Cir.
2001).

On direct appeal, Floyd claimed that the State did not
disclose impeachment evidence against the State's key witness,

Michael Younger.  In his state habeas petition, he argued that
the State failed to disclose the second page of a police report,
and challenged the timing of the disclosure of two statements.
The Connecticut Supreme and Appellate Courts analyzed these
claims under Brady.  See Floyd I, 253 Conn. at 736-37, 756 A.2d
at 821; Floyd II, 99 Conn. App. at 533-34; 914 A.2d at 1055.
Because the state courts applied the correct legal standard,
their decisions are not contrary to Supreme Court law.

> ### a.    Impeachment Evidence Against Key Witness

On direct appeal, Floyd argued that Younger had been
promised a plea agreement or received other consideration in
exchange for his testimony against Floyd.  While that appeal was
pending, the Connecticut Supreme Court remanded the case to the
trial court to conduct an evidentiary hearing on this issue.  At
the hearing, Floyd learned of notations in the State's criminal
file for Younger concerning a pending drug offense, and a letter
from Younger's attorney to Donald Browne, the State's Attorney
for the Judicial District of Fairfield.  Neither had been
disclosed at trial.  See Answer App. H at 63; App. C at A63, A74.

The notations in Younger's criminal file indicated that a
police detective had informed the prosecutor's office that
Younger had information regarding Floyd's murder case, and that
the State repeatedly sought continuances in Younger's pending
criminal case to delay its resolution until after Younger

testified against Floyd.  The file also revealed that the State
did not oppose Younger's motion for release on a promise to
appear, rather than requiring him to post a bond, because Floyd's
case was still pending.  Following Floyd's trial, Browne
recommended a reduced sentence for Younger on that drug case.
See Answer App. H at 141-145, 153.

In the letter, Younger's attorney stated that an Assistant
State's Attorney had told her that the lengthy court continuances
for Younger were related to his anticipated testimony against
Floyd.  The attorney also wrote that Younger would be a strong
witness in that case.  The attorney stated at the hearing
following the remand from the State Supreme Court that she
received no response to the letter, but that she told Younger
about it and that both she and Younger assumed that he would
testify against Floyd and ultimately receive a favorable plea
agreement.  However, she denied the existence of any plea
agreement prior to Floyd's trial or any promise by the State of
leniency in exchange for Younger's testimony at that trial.  She
stated that she and Younger only hoped for favorable treatment.
See Answer, App. C at A63; App. H at 111-13.[4]

The Superior Court, following the remand, considered the
documentary evidence and the testimony of Younger's attorney,

---

[4]  The State's Attorney's Office also did not prosecute
Younger for a probation violation arising from his drug arrest.
253 Conn. at 738.

State's Attorney Browne and the Assistant State's Attorneys who
prosecuted Younger and Floyd.  The court concluded that, although
Floyd had presented evidence establishing a connection between
Younger's willingness to testify and the State's willingness not
to oppose a bond reduction and to continue the resolution of his
criminal case until after Younger testified, he had not presented
sufficient evidence to establish the existence of an implied plea
agreement at the time Younger testified against Floyd.  See
Answer, App. C at A65-A75.  The matter was then returned to the
Connecticut Supreme Court.

The Connecticut Supreme Court, in its decision following
remand, noted that Brady encompassed both exculpatory and
impeachment evidence and acknowledged that a plea agreement
between the State and a key witness is the type of information
that must be disclosed.  The court held that whether a plea
agreement existed was a question of fact to be determined by the
trial court with the burden of proof resting on Floyd.  See Floyd
I at 737, 756 A.2d at 821.

The Connecticut Supreme Court noted that the evidence,
including the testimony of Younger's attorney and State's
Attorney Browne, supported the trial court's conclusion that
there was no implied plea agreement.  In addition, the fact that
Younger ultimately received a lenient sentence following the
completion of Floyd's trial did not demonstrate that there was an

15

implied plea agreement at the time Younger testified against
Floyd.  Thus, the Connecticut Supreme Court found that the trial
court's determination was reasonable, and found no <u>Brady</u>
violation.  <u>See</u> <u>id.</u> at 739, 756 A.2d at 822.

In a similar situation, the Second Circuit has held that:

> The government is free to reward witnesses
> for their cooperation with favorable
> treatment in pending criminal cases without
> disclosing to the defendant its intention to
> do so, *provided* that it does not promise
> anything to the witnesses prior to their
> testimony.  That is not to say that a
> prosecutor may circumvent his *Brady*
> obligations by failing to reduce to writing a
> plea agreement or a promise of leniency.  Nor
> may a prosecutor avoid his duty of disclosure
> by phrasing a promise of favorable treatment
> in general terms.

<u>Shabazz v. Artuz</u>, 336 F.3d 154, 165 (2d Cir. 2003).  In <u>Shabazz</u>,
the witnesses' case files indicated that the District Attorney
did not intend to dispose of the cases until after the witnesses
testified in the prosecution of Shabazz.  In addition, various
judges referred to "deals" made by the witnesses in different
proceedings prior to the Shabazz trial.  The District Attorney
testified that he did not promise the witnesses leniency in
exchange for their testimony, and the petitioner presented no
evidence that the District Attorney's Office ever made such a
representation.  <u>See</u> <u>id.</u> at 163-64.  The Second Circuit noted
that both the witnesses and the prosecutor had different reasons
to defer resolution of the witnesses' cases until after they

16

testified:  the witnesses could then argue at sentencing that their cooperation warranted leniency and the District Attorney retained leverage to ensure that the witnesses would testify. The Second Circuit concluded that, although deferring resolution of the witnesses' cases may have given the impression that they would receive leniency, the postponements alone did not evidence an agreement.  See id. at 164.  The court also held that the fact that the witnesses did receive lenient treatment after they testified was insufficient to establish the existence of an agreement of leniency in exchange for testimony.  See id. at 165. Thus, the Second Circuit requires more to establish an implied plea agreement.[5]  See id. at 165 n.6 (noting that receipt of favorable treatment accompanied by a state court's finding that the prosecutor's account of events was not credible could constitute evidence of an implied plea agreement).

    In this case, the Assistant State's Attorneys and Younger's attorney all testified that no promise of leniency had been made to Younger at the time of his testimony.  In addition, State's Attorney Browne testified that it was his practice never to enter into leniency agreements before the witness testified.  The state trial court found these witnesses credible.  In both this case and Shabazz, the witnesses' case files revealed postponements of

_____

[5]   But see Reutter v. Solem, 888 F.2d 578, 582 (8th Cir. 1989) (court found Brady violation without any agreement, express or implied, between witness and prosecutor).

17

the witnesses' cases until after they testified, and here the
State did not oppose Younger's motion for bond reduction.  In
view of Shabazz, this court concludes that the determination of
the Connecticut Supreme Court that Floyd failed to demonstrate
the existence of an implied plea agreement at the time of
Younger's testimony is not an unreasonable application of Supreme
Court law.

The Connecticut Supreme Court did conclude, however, that
the State should have disclosed to Floyd the letter from
Younger's attorney and the fact that the State did not oppose the
reduction of Younger's bond to a promise to appear.  Although
this information would have been favorable to Floyd, the State
Supreme Court found no Brady violation for its nondisclosure
because the court concluded the information was not material.
See id. at 741, 756 A.2d at 823.

At the time Younger testified, Floyd's attorney knew that he
had a lengthy criminal record, that the current drug charges
against him had been pending for eighteen months, that he was not
presently incarcerated on those charges, and that Younger was
also on probation for a 1988 robbery conviction.  Younger
testified at Floyd's trial that he did not know whether his
current charges had been continued until after he testified
against Floyd.  He stated that, at the time of his own arrest, he
had not then sought a deal from the police in exchange for

18

information about Floyd's case.[6]  Younger also testified that he

had numerous prior convictions and pending drug charges, but he

was not incarcerated.  He also stated that he was not aware of

any special consideration due him for his testimony against

Floyd.

The Connecticut Supreme Court concluded that Floyd had not

shown that Younger's trial testimony was false or intentionally

misleading based on the entire trial record.  The Connecticut

Supreme Court concluded that the jury could have inferred from

Younger's testimony that the existence of the pending criminal

charges was the reason Younger decided to testify for the State.

In fact, Floyd's attorney urged the jury to draw this inference

during his closing argument, and the trial court specifically

instructed the jury that it could consider Younger's pending

---

[6]  In his reply brief to the Connecticut Appellate Court on
the appeal of the denial of his state habeas petition, Floyd
pointed out that Bridgeport Police Detective Sherbo testified at
the habeas hearing that he wrote to the Office of the State's
Attorney regarding the information Younger had provided about
Floyd's case.  Detective Sherbo testified that he assumed that
Younger asked him to write the letter because he would not
ordinarily have conveyed such information.  Floyd argued that
this information contradicts the Connecticut Supreme Court's
finding that Younger did not testify falsely when he stated that
he did not seek favorable treatment from the police.  See
Resp't's Mem. App. M.
        The Connecticut Appellate Court rejected this argument.
Although Floyd does not reference this testimony in his federal
habeas petition, the court notes that the testimony provides
further support for the fact that Younger hoped for favorable
consideration.  It does not, however, contradict the state court
finding that no implied plea agreement existed at the time
Younger testified.

criminal case and his hope of favorable treatment when considering whether Younger had any bias or motive to testify falsely.  See Floyd I, 253 Conn. at 745-46, 756 A.2d at 825.

Because the jury was made aware of Younger's motive to testify falsely, the Connecticut Supreme Court determined that the impeachment value of the undisclosed information was "incremental."  253 Conn. at 746, 756 A.2d at 825.  That court also noted that Younger's testimony was supported by two other eyewitnesses who corroborated his version of how the shooting occurred.  The Connecticut Supreme Court thus concluded that disclosure of the additional information would not have changed the verdict.  The Connecticut Supreme Court concluded that, because failure to disclose the information did not prejudice him, Floyd did not satisfy the third element to establish a Brady violation.  See id. at 746 & n.33, 756 A.2d at 825-26 & n.33.

The dissent filed in the Connecticut Supreme Court stated that if the information has been disclosed, Floyd's attorney could have cross-examined Younger more vigorously and challenged his denials of lenient treatment with additional evidence.  In addition, the dissent viewed the other witnesses, whose statements confirmed some facts in Younger's testimony, as "neither compelling nor unimpeachable."  Thus, the dissent disagreed with the majority's conclusion that the information was "merely incremental."  See id. at 755-60, 756 A.2d at 830-33.

The majority opinion of the Connecticut Supreme Court analyzed the prejudice element of the test by considering whether the undisclosed information was material, that is, whether there is a reasonable probability that, if the information had been disclosed, the result of the trial would have been different. See Kyles v. Whitley, 514 U.S. 419, 433 (1995). The test is not, as Floyd contends, whether the undisclosed information is new and not merely cumulative. It must be determined whether the addition of the undisclosed information would "undermine confidence in the verdict." Strickler v. Greene, 527 U.S. 263, 290 (1999). The existence of corroborating evidence also lessens the materiality of undisclosed impeachment evidence. See id. at 293. See also United States v. Avellino, 136 F.3d 249, 257 (2d Cir. 1998) (noting that impeachment evidence is considered material where the witness provides the only evidence linking the defendant to the crime or the only evidence of an essential element of the crime) (citations omitted), reh'g denied, (2d Cir. Apr. 23, 1998) (per curiam).

This court does not merely determine whether, if it were considering the matter de novo, it would reach the same result as the state courts. See Williams v. Taylor, 529 U.S. 362, 411 (2000) ("a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal

21

law erroneously or incorrectly.  Rather, that application must also be unreasonable.").  The standard for unreasonableness is significantly higher than the standard for incorrectness.  <u>See</u> <u>Schriro</u>, 127 S. Ct. at 1939.  This court concludes that Floyd has failed to meet this standard.  The Connecticut Supreme Court's analysis of Floyd's <u>Brady</u> claim regarding favorable consideration for Younger resulting from his testimony at Floyd's trial and the importance of the undisclosed information was not an unreasonable application of Supreme Court law.  Accordingly, the petition for writ of habeas corpus is denied regarding this claim.

### b.    Additional Disclosures

Floyd argued in his state habeas petition that the State failed to provide the second page of a police report in which Bridgeport Police Detective Sherbo stated that Delgado told two members of Avellanet's family that someone else was responsible for the murder.  In addition, he argues that two statements were not provided in a timely manner.

### (i)    The Police Report

Following a hearing on Floyd's state habeas petition, the court found that the statement on the second page of the police report contained triple hearsay.  It stated that Avellanet's brother told Detective Sherbo that another person told him that Delgado said that other persons were responsible for the murder. The state habeas court heard the testimony of the prosecutor that

he provided a complete copy of the report to defense counsel
during trial while Detective Sherbo was testifying.  That court
reviewed the trial transcript and noted that Detective Sherbo was
testifying from the complete report and was cross-examined by
trial counsel regarding that report.  In addition, a comparison
of the trial exhibit and the report provided by Floyd at the
habeas hearing showed that the reports were identical.  <u>See</u>
Resp't's Mem. App. J at 12-14.  Floyd also presented no evidence
suggesting that trial counsel would have been able to discover
any information regarding third party culpability if he had
investigated the statement on page two of the report.  Upon
review, the Connecticut Appellate Court noted that information
provided during trial is not considered suppressed under <u>Brady</u>
and concluded that the decision of the habeas court that no <u>Brady</u>
violation had occurred was not clearly erroneous.  <u>See</u> <u>Floyd II</u>,
99 Conn. App. at 535-36, 914 A.2d at 1056.

        The federal court presumes that the state court's
determination of factual issues are correct.  After considering
the evidence and comparing the police report to the trial
transcript, the state habeas court determined that the entire
police report had been disclosed to trial counsel during trial.
Floyd has presented no evidence in support of his federal habeas
petition to overcome that presumption.  <u>See</u> <u>Miller-El v.</u>
<u>Cockrell</u>, 537 U.S. 322, 340 (2003) (state court decision based on

factual findings will not be overturned unless shown to be
"objectively unreasonable in light of the evidence presented in
the state court proceeding"). Because Floyd failed to present
evidence at the state habeas hearing contradicting the state
court's finding that the entire police report was disclosed,
federal habeas relief is not warranted on this claim.

### (ii) The Statements

Floyd also argues that statements made by Luis Troncoso and
Younger were not disclosed in a timely manner. The state habeas
court found that Younger's statement was disclosed immediately
following Younger's testimony and that Troncoso's statement was
disclosed in summary form before the probable cause hearing and
in full "nearly three weeks prior to trial." 99 Conn. App. at
536. Thus, the habeas court concluded that Floyd failed to
establish a Brady violation. See Answer, App. J at 14-15. The
Connecticut Appellate Court concluded that the statements of all
three witnesses were "essentially consistent" and that Floyd
failed to establish prejudice by the timing of the disclosures.
Floyd II, 99 Conn. App. at 537, 914 A.2d at 1057.

In analyzing a Brady claim, the Second Circuit considers
whether the information was "disclosed in sufficient time to
afford the defense an opportunity for use." DiSimone v.
Phillips, 461 F.3d 181, 196 (2d Cir. 2006) (internal quotation
marks and citation omitted). In DiSimone, the defendant was

24

charged with stabbing the victim to death.  Despite specific requests for the information, the prosecution did not disclose an affidavit stating that a third person had stabbed the victim before the defendant until shortly before the close of the state's case.  The trial court denied the defendant's repeated requests for continuance to investigate the information and motions for mistrial.  See id. at 194.  The Second Circuit held that if the defense had the information earlier, the defense strategy might have changed from whether the defendant stabbed the victim to whether he caused the death.  The Second Circuit then remanded the case to enable the district court to determine whether the defendant had prior knowledge of the relevant information.  See id. at 198.

Regarding the Troncoso statement, the state court found that all of the essential information from the statement was disclosed in the summary provided before the probable cause hearing and that the entire statement was disclosed three weeks prior to trial.  At no time did defense counsel seek a continuance to investigate the information.  The Connecticut Appellate Court noted that information in the statement was inconsistent with the autopsy results and the statements of the other witnesses.  The appellate court concluded that the state did not suppress the Troncoso information.  See Floyd II, 99 Conn. App. at 536-37, 914 A.2d at 1056.

25

The Connecticut Appellate Court reviewed the Younger
statement and concluded that the versions of the shooting were
essentially consistent and that the statement was disclosed to
the defense in accordance with the state rule of practice in
effect at the time of trial.  The appellate court noted that
Floyd failed to show that he was prejudiced by the timing of the
disclosure.  See id. at 537, 914 A.2d at 1057.

Unlike the situation in DiSimone, Floyd has not identified
an alternate defense that would have been presented if the
information had been provided earlier.  Thus, he has not shown
that the late disclosure prejudiced his defense.  The factual
findings of the state court are presumed correct.  The federal
court will overturn such factual findings only where the
petitioner presents clear and convincing evidence that the
factual findings were unreasonable in light of the evidence
before the state court.  See Miller-El v. Cockrell, 537 U.S. 322,
340 (2003).  Floyd has not overcome the presumption of
correctness.  Thus, the state court decision was not an
unreasonable application of Brady.

In addition, the Supreme Court has not addressed the timing
of Brady disclosures.  The Court has only specifically required
that such disclosures be made before the end of trial.  See
United States v. Agurs, 427 U.S. 97, 103 (1976) ("rule of Brady
v. Maryland, ... arguably applies in three quite different

26

situations.  Each involves the discovery, after trial of
information which had been known to the prosecution but unknown
to the defense").  Because the Supreme Court has not directly
addressed the appropriate timing of disclosures under <u>Brady</u> and
has found such violations only where the discovery of the
information occurred after the trial had concluded, the state
court's determination that mere disclosure during trial was
insufficient to support a <u>Brady</u> violation is not an unreasonable
application of Supreme Court law.  Floyd's petition for writ of
habeas corpus is denied on this ground.

### 3.    Perjured Testimony

Floyd contends that the prosecutor permitted Younger to
commit perjury by testifying that he had received no
consideration for his testimony and impermissibly vouched for the
witness' testimony by arguing that the defense had presented no
evidence to refute the testimony.  <u>See</u> Doc. #31 at 8.  The
respondent argues that there is no factual basis to support this
claim.

A conviction will be overturned if the prosecutor knew, or
should have known, that perjured testimony was being offered and
there is a reasonable likelihood that the perjured testimony
could have affected the verdict.  <u>See</u> <u>Agurs</u>, 427 U.S. at 103 &
n.7.  Here, however, following the evidentiary hearing ordered by
the Connecticut Supreme Court, the trial court determined that

27

there was no implied agreement between the State and Younger at the time Younger testified against Floyd. Thus, the Superior Court found that Younger did not offer perjured testimony when he stated that he was aware of no favorable treatment. The Connecticut Appellate Court upheld the Superior Court's factual findings. In addition, the Connecticut Appellate Court noted that the jury was aware of Younger's pending criminal charges and that he was not incarcerated at the time of Floyd's trial.[7]

This court concludes that the Connecticut Appellate Court's reliance on the trial court's factual findings and determination that prosecutor did not offer perjured testimony was not an unreasonable application of Supreme Court law.

### 4.    Missing Witness Argument

Floyd next argues that the prosecutor improperly enhanced the credibility of Younger by noting during his summation that the defense had not called Younger's lawyer to testify as to whether Younger received any benefits from the prosecutor's office for his testimony. See Doc. #31 at 9. The Connecticut Supreme Court considered this as a claim of prosecutorial misconduct. See Floyd I, 253 Conn. at 749, 756 A.2d at 827.

---

[7] The prosecutor in Floyd's trial testified at the remand hearing (during the direct appeal) that he had been unaware of the State's decision not to oppose Younger's bond reduction and the letter from Younger's lawyer seeking favorable treatment. 253 Conn. at 739.

28

Prosecutorial misconduct during a closing argument does not give rise to a constitutional violation unless the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).[8]  That the prosecutor's remarks may have been "undesirable" or even "universally condemned" does not rise to the level of a constitutional violation unless the trial also was so unfair as to violate due process.  See Darden v. Wainwright, 477 U.S. 168, 181 (1986).  The petitioner must identify specific instances of "egregious misconduct," Donnelly, 416 U.S. at 647-48, that show he was substantially prejudiced.  See United States v. Thomas, 377 F.3d 232, 244 (2d Cir. 2004).  In evaluating a claim of prosecutorial misconduct, the court considers the comments in the context of the entire trial and evaluates "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct."  United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999) (citation omitted); see also United States v. Young, 470 U.S. 1, 12 (1985) (holding that the court must evaluate the probable effect of the remarks on the jury's ability to judge the evidence fairly).

---

[8]  In Donnelly the Court applied this standard where no denial of a specific provision of the Bill of Rights was claimed. 416 U.S. at 643.  That is also the situation here.

The objectionable comment in this case, "Call his [Younger's] lawyer up.  Have the lawyer come down and testify," referred to the issue of whether Younger had or would receive leniency from the State in his own drug case in exchange for his testimony against Floyd.  The comment was made as part of the State's rebuttal argument, two sentences in an argument reproduced as thirteen pages of transcript.  See Answer App. F at 347-59.  Floyd's counsel had probed this issue during Younger's cross-examination, and brought out some support for an inference that Younger would likely benefit from his testimony at Floyd's trial.  He then asked the jury during his closing argument to conclude that favorable treatment was expected by Younger.  The trial court instructed the jury in its subsequent charge that the jury could use the hope for favorable treatment as evidence of motive for Younger to testify favorably for the State.  See id. at 364, 370, 376.  The trial court did not give a "missing witness" instruction that they could draw an adverse inference against Floyd for the failure of his counsel to call Younger's lawyer as a witness.  The trial court did instruct the jury that Floyd had no obligation to present any evidence.

In light of the context of the whole trial, the fact that the prosecutor's brief statement was in response to defense counsel's argument that Younger had indeed received a favorable plea agreement and other consideration in exchange for his

testimony, and the trial court's instructions, this court
concludes that the State Supreme Court's determination that this
statement by the prosecutor, although "not condone[d]" by the
Connecticut Supreme Court (253 Conn. at 749), was not enough to
violate Floyd's right to a fair trial, and not an unreasonable
application of U.S. Supreme Court law.  The petition for writ of
habeas corpus is denied on this ground.

### 5.    Ineffective Assistance of Counsel

Finally, Floyd contends that trial counsel was ineffective
because he (1) did not adequately investigate potentially
exculpatory information regarding third party culpability, (2)
failed to move for a continuance when a witness statement was
disclosed shortly before trial, (3) failed to move for a mistrial
when the State's key witness' statement was disclosed after the
witness testified, (4) failed to seek disclosure of the
confidential informant who informed police that the murder had
been committed by gang members, (5) failed to introduce train
tickets as alibi evidence, (6) failed to call a handwriting
expert to analyze the signature on a witness' statement, (7) did
not call a witness to testify that Delgado had told the witness
that the murder was committed by two other individuals and (8)
did not call an alibi witnesses.  See Doc. #31 at 10.

The respondent first argues that Floyd has not fully
exhausted his state court remedies for this claim because he did

31

not include ineffective assistance of counsel in his petition for certification to the Connecticut Supreme Court.  See Resp't's Mem. App. N.

A prerequisite to habeas corpus relief under 28 U.S.C. § 2254 is the exhaustion of available state remedies.  See O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A).  The Second Circuit requires the district court to conduct a two-part inquiry.  First, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it."  Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir. 2003) (citation omitted).  Second, he must have "utilized all available mechanisms to secure appellate review of the denial of that claim."  Lloyd v. Walker, 771 F. Supp. 570, 573 (E.D.N.Y. 1991) (citing Wilson v. Harris, 595 F.2d 101, 102 (2d Cir. 1979)).

Floyd's ineffective assistance of counsel claim is not exhausted because he did not present that claim to the Connecticut Supreme Court.  However, this court may deny an unexhausted claim on the merits.  See 28 U.S.C. 2254(b)(2).  The court may not, however, grant federal habeas relief on an unexhausted claim.  See Aparicio v. Artuz, 269 F.3d 78, 90 n.5 (2d Cir. 2001).  The respondent urges the court to consider and deny this claim on the merits.

An ineffective assistance of counsel claim is reviewed under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail, Floyd must demonstrate, first, that counsel's conduct was below an objective standard of reasonableness established by prevailing professional norms and, second, that this deficient performance caused prejudice to him. See id. at 687-88. Counsel is presumed to be competent. Thus, the petitioner bears the burden of demonstrating unconstitutional representation. See United States v. Cronic, 466 U.S. 648, 658 (1984). To satisfy the prejudice prong of the Strickland test, Floyd must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial. Strickland, 466 U.S. at 694. The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions. See Rompilla v. Beard, 545 U.S. 374, 381 (2005). To prevail, Floyd must demonstrate both deficient performance and sufficient prejudice. See Strickland, 466 U.S. at 700. Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.

In analyzing this claim, the Connecticut state courts applied the standard established in Strickland. Because they applied the correct legal standard, the state court decisions

cannot meet the "contrary to" prong of section 2254(d)(1).

### a.   Third Party Culpability

Floyd contends in the first, fourth and seventh examples of ineffective assistance of counsel that trial counsel failed to investigate information that might support a claim of third party culpability.  Specifically, Floyd states that trial counsel failed to call Jose Davilla as a witness to testify that Delgado had implicated two other persons in the murder and failed to seek the name of a confidential police informant who told police that the murder was committed by two gang members.

The state court found that Floyd failed to establish the prejudice prong under Strickland.  The jury found Floyd guilty after hearing three eyewitnesses testify[9] that Floyd shot the victim.  The testimony was corroborated by the physical evidence.  At the habeas hearing, Floyd failed to present any witness supporting a defense of third party culpability who was available to testify at trial and whose testimony would have been admissible.  Although Floyd identified two persons who reported information, he did not provide evidence that either person would have testified or that the statements were not inadmissible hearsay.  See Floyd II at 531-32, 914 A.2d at 1054.

---

[9]   Younger and Delgado testified at trial; Reginald Berry's statement was admitted after Berry denied the matters in his statement.  253 Conn. at 726-27.

34

Without any evidence establishing third party culpability, the state courts' determination that Floyd did not show that he was prejudiced by trial counsel's failure to pursue a third party culpability defense is not an unreasonable application of Supreme Court law.

### b.    Failure to Move for Continuance or Mistrial

In the second and third examples of ineffective assistance of counsel, Floyd argues that trial counsel failed to move for a continuance when a witness statement was disclosed shortly before trial and failed to move for mistrial when Younger's statement was disclosed at the conclusion of his testimony.  Neither argument was presented to any state court.

Floyd has not presented any evidence showing what information would have been discovered if trial counsel sought a continuance.  In addition, the court has determined, above, that disclosure of Younger's statement at the conclusion of his testimony did not constitute a <u>Brady</u> violation.  Thus, Floyd has made no showing that a mistrial was appropriate.  Floyd had not shown that reasonably competent counsel would have moved for a continuance or mistrial or that he was prejudice by these inactions.

### c.    Alibi Evidence

In the fifth example of ineffective assistance of counsel, Floyd states that trial counsel failed to introduce train tickets

35

as evidence of his alibi defense.

At trial, Floyd's father testified that, at the time of the shooting, Floyd was attending a party in Massachusetts.  See Resp't's Mem. App. J at 22.  Floyd's father testified that he took Floyd to the Bridgeport train station in the late afternoon or early evening of January 20, 1994, and that he called Floyd in Massachusetts later that evening.  He also testified that he had retained the return train ticket from Massachusetts.  Telephone records of calls by Floyd's father to Massachusetts for January 20, 1994 were also introduced.  See Answer App. F at 232-259. The jury apparently did not believe this testimony.

At the habeas hearing, Floyd's father testified that he gave defense counsel the train tickets Floyd used for his trip to Massachusetts.  The habeas court, though, found that Floyd had presented no credible evidence that he actually used the tickets to go to Massachusetts.  See Resp't's Mem. App. J at 22.  This factual finding is presumed correct.  Also, the State Court's determination that Floyd failed to establish prejudice from trial counsel's failure to offer the train tickets as evidence is not an unreasonable application of the Strickland standard.

In his eighth example of ineffective assistance of counsel, Floyd contends that trial counsel should have called Annette Rodriguez as an alibi witness.  Floyd presents no evidence regarding the substance of Rodriguez' testimony.  The jury heard,

36

and rejected, Floyd's alibi defense.  Because Floyd has presented

no evidence showing that Rodriguez was available to testify at

trial or detailing the substance of her testimony, he fails to

make any showing that reasonably competent counsel would have

called Rodriguez to testify or that he was prejudiced by her

failure to testify.  The court concluded that Floyd has not

established an ineffective assistance of counsel claim regarding

the failure to call Rodriguez as a witness.

### d.    Handwriting Expert

Finally, in his sixth example of ineffective assistance of

counsel, Floyd states that trial counsel failed to obtain

testimony from a handwriting expert to challenge the signature on

Reginald Berry's statement.  See note 9, supra.  Floyd did not

raise this claim in any state court.

At the state habeas hearing, a payroll clerk testified that

trial counsel had sought authorization to hire a handwriting

analyst to review the signature of one of the eyewitnesses.  On

appeal, Floyd provided copies of invoices from an investigative

service seeking payment for examination of the documents.  See

Resp't's Mem. App. K at 6-7, A61-A65.  Floyd has presented no

evidence of the results of the examination to this court.  From

the evidence of record, the court assumes that the results were

not favorable to Floyd, since the service spent twenty hours

analyzing the documents and were not called to testify about the

results of the examination.  Absent any evidence of favorable results of the analysis, Floyd fails to establish that reasonably competent counsel would have acted differently or that he was prejudiced by the failure to call the handwriting expert as a witness.

The petition for writ of habeas corpus is denied on the ground that trial counsel was ineffective.

**III. CONCLUSION**

Floyd has not shown that the state court's findings were contrary to or an unreasonable application of Supreme Court law. Thus, the amended petition for a writ of habeas corpus [**Doc. #31**] is **DENIED**.  His motion for evidentiary hearing [**Doc. #36**] is **DENIED** as well.  Because Floyd has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 3rd day of March, 2008, at Hartford, Connecticut.

/s/ Christopher F. Droney
Christopher F. Droney
United States District Judge

38